STEVEN W. MYHRE
Acting United States Attorney
ROBERT A. KNIEF
Assistant United States Attorney
District of Nevada
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada  89101
Phone:  (702) 388-6336
Fax:  (702) 388-6418
Email:  robert.knief@usdoj.gov
Attorneys for United States of America

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>                vs.<br><br>GHASSAN BOUARI HOUBOUS,<br><br>                Defendant. | CASE NO.:  2:16-cr-032-JCM-GWF<br><br>GOVERNMENT RESPONSE TO DEFENDANT'S MOTION TO DISMISS |

**CERTIFICATION:  This Response is timely filed.**

The United States, by and through Steven W. Myhre, Acting United States Attorney, and Robert Knief, Assistant United States Attorney, files the following response to defendant's Motion to Dismiss. (#89).

Defendant seeks dismissal of the charges against him claiming outrageous government conduct.  As the facts establish, agents were conducting a legitimate and successful investigation of Emile Bouari (Bouari), defendant's brother.  The participation of defendant was a result of communication and agreements between defendant and Bouari, not defendant and investigators.

## FACTS

In April of 2014, the FBI began an investigation of Emile Bouari. That investigation led to Bouari laundering money for an FBI informant and an undercover agent.

On May 8, 2014, the first money laundering transaction took place at Bouari's business in Las Vegas. Bouari accepted $20,000 cash from undercover agents and was told the cash was proceeds of drugs sales and prostitution. In return, Bouari provided the agents with a check $18,000 drawn on Bouari's business account. The $2000 difference was kept by Bouari as payment for laundering the funds provided by the FBI.

On May 29, 2014, a second exchange for $50,000 took place, also at Bouari's business. During this meeting, Bouari told the agents that he had spoken to his brother, defendant, that day and that Bouari had worked out a system to use defendant's bank accounts as part of the money laundering plan. Bouari stated defendant was in Miami and that the agents should visit defendant in Miami.

On June 2, 2015, agents acting in an undercover capacity met with defendant and Bouari in Miami. At that meeting, agents told defendant that they were in Miami to explore investing in massage parlors which were fronts for prostitution. Defendant stated that he would be interested in partnering with the agents and that most of those workers in Miami were Asian and Latin women.

On August 20, 2015, agents were again in Miami, this time to conduct a money laundering transaction with Bouari for $60,000. When Bouari arrived for the meeting he informed the agents that he had forgotten the money counter but he had

called defendant and defendant was on his way with the money counter. Defendant arrived at the hotel with the money counter and called for Bouari to pick it up at the front desk. Agents asked Bouari to have defendant bring the money counter to the room, which defendant did. When defendant arrived in the room the money, which defendant had reason to believe was proceeds of drug sales or prostitution, was counted and defendant left.

The investigation resulted in Bouari introducing other individuals to participate in the illegal scheme and those individuals participating in a dozen transactions involving more than half a million dollars in cash which they believed to be proceeds of drug sales and prostitution.

**ARGUMENT**

1. Burden of Proof

When a defendant seeks dismissal of the charges against him claiming outrageous government conduct, he bears the burden of proving that the government's conduct was "so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process." *United States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996) (quoting *United States v. Garza–Juarez*, 992 F.2d 896, 904 (9th Cir. 1993). This is "an extremely high standard." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991).

2. Analysis of Government's Actions

The defendant's involvement and the charges against him arise from three separate sources. The first source is comments made by Bouari on May 29, 2014, as they relate to his contact with defendant. The second is a conversation between

3

defendant, Bouari, and undercover operatives in Miami on June 2, 2015. The third involves a money laundering deal which took place in Miami on August 20, 2015, between agents and Bouari in which defendant was tangentially involved. When the appropriate analysis is applied to these activities, it is apparent that defendant's motion is without merit.

In *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013), the Ninth Circuit set out six factors for evaluating outrageous government conduct.

> These factors are analyzed collectively in determining whether government conduct is outrageous: "(1) known criminal characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendants to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; and (6) the nature of the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue." *Black*, 733 F.3d at 303. The first three are relevant to how the government set up the sting, the fourth and fifth analyze the government's role in the sting, and the last relates to the justification for the operation. *Id.* at 303–04.

*United States v. Mohamud*, 843 F.3d 420, 435 (9th Cir. 2016).

When these factors are applied to the government's conduct as it relates to defendant,[1] defendant's claim of outrageous government conduct must fail.

a. May 29, 2014

At the beginning of the investigation of Bouari, agents did not have any

---

[1] *Johns v. County of San Diego*, 114 F.32d 874, 876 (9th Cir.1997) ("[C]onstitutional claims are personal and cannot be asserted vicariously."), citing *United States v. Mitchell*, 915 F.2d 521, 526 n. 8 (in asserting outrageous conduct of government as defense, defendant has no standing "to raise the rights of others whose rights may have been violated....").

4

1 indication that defendant was involved in any criminal activity. The defendant is
2 correct when he states "agents did not meet Houbous until they flew to Miami more
3 than a year after the reverse sting was initiated." (#89 at 8:26-27).  It would be
4 incorrect to argue, as defendant does, that agents had no individualized suspicion at
5 the time of the meeting in Miami.

6       Defendant quotes extensively from conversations recorded during this
7 investigation.  Conspicuously absent from those quotes, however, is the conversation
8 in May of 2014 during which defendant's name and potential involvement is brought
9 up by Bouari not the agents.

10     Bouari:   I talked to my brother today and I worked out a system . . .
11     UC:       Okay.
12     Bouari:   . . . so he'll be safe, 'cause we're going to work it out with my brother
13                   that we use his bank accounts and his company . . .
14     UC:       Whose bank account?
15     Bouari:   His.
16     UC:       Your brother's.
17     Bouari:   Yeah.  So it's like I'm taking off a lot of the risk.  'Cause I told him, I
18                   said look if you fuck around with these guys they're going to kill you, so
19                   don't . . .
20     Bouari:   No, my brother's good, I can, you know. He's, he's, he's desperate and
21                   he's hungry, put it that way.  So if he can make a few thousand . . .

22       Bouari's comments make it clear that it was Bouari and not the agents who
23 initially contacted defendant about participating in money laundering activity.  At

1  that point, agents had a good faith belief and individualized suspicion that defendant
2  was either already involved in Bouari's activities or had agreed to become involved
3  in those activities. All with no prompting, encouragement, or pressure by the agents.
4      b.   June 2, 2015
5      On June 2, 2015, agents met with defendant and Bouari in Miami. During
6  this meeting, the agents were introduced as men exploring the possibility of investing
7  in Florida massage parlors that would be fronts for prostitution. Defendant said he
8  was interested in partnering with the agents and noted that most of the workers in
9  Miami were Asian and Latin women. Defendant also noted Russian women often
10 work at these parlors as well. Defendant was asked if he would help acquire Latin
11 women if the agents decided to open a parlor in Miami. Defendant agreed to ask
12 around.
13     This conversation severely undermines defendant's claims that he "was under
14 the impression they [agents] were legitimate businessmen." (#89 at 15:10-11).
15     c.   August 20, 2015
16     On August 20, 2015, a money laundering transaction took place in Miami
17 between the agents and Bouari. The circumstances of that meeting and defendant's
18 role were previously discussed. While defendant's involvement may have been
19 minimal, that is not the issue before this Court. This issue is whether defendant's
20 involvement in that transaction was the result of outrageous government conduct.
21 The clear fact is that it was not.
22
23

The conversation between Bouari and the agents make it clear that Bouari forgot to bring a money counter to the meeting. Bouari called defendant and told defendant to bring the money counter. That conversation resulted in defendant bringing the money counter to the hotel. That conversation took place before Bouari even met with the agents that day. That conversation was not the result of any conduct, outrageous or otherwise, by the government.

While the defendant is correct in pointing out that it was the government agents that encouraged Bouari to have defendant bring the money counter to the hotel room, that activity hardly rises to outrageous government conduct.

None of the six factors set out in *Black*, when applied to the facts of this case support defendant's arguments. It was Bouari, not the government, who brought defendant into the activities which were the subject of the investigation. Once that occurred, agents had a individualized suspicion as to the defendant. The government played no role in the agreement to use defendant's bank accounts discussed by Bouari in May of 2014 and the government played no role in having defendant bring a money counter to the meeting on August of 2015. While the government did encourage defendant to participate in the money laundering activity after the August 20th Miami meeting, defendant declined to do so and none of the criminal activity which forms the bases for the charges against him arises from that conduct.

The defendant argues that, after the August 20 transaction, government agents used coercive tactics in attempts to draw defendant into criminal activity. Defendant also notes that none of the tactics he alleges as improper were successful. The criminal conduct which forms the bases for the charges against the defendant

had already occurred, and as noted above, occurred with very little influence by the agents. It was defendant's brother and not the agents who persuaded defendant to become involved in the money laundering activity. That defendant's involvement was less than his brother's does not mean the agent's activities were outrageous.

Defendant dedicates a great deal of his argument to facts of cases reviewing claims of outrageous conduct. The facts of those cases provide limited assistance in resolving this matter.

> There is no bright line dictating when law enforcement conduct crosses the line between acceptable and outrageous, so "every case must be resolved on its own particular facts." *United States v. Bogart*, 783 F.2d 1428, 1438 (9th Cir.1986), *vacated in part on other grounds sub nom. United States v. Wingender*, 790 F.2d 802 (9th Cir.1986) (order).

*United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013)

The particular facts of this case are far less egregious than fact patterns the Ninth Circuit has reviewed and found to be appropriate. Agents were not "trolling for targets" as was the case in *Black*, defendant was brought to them. In this investigation agents supplied only money, an appropriate investigative technique. *United States v. So*, 755 F.2d 1350, 1353 (9th Cir. 1985)( It is not outrageous to provide necessary items to a conspiracy.

. . .

. . .

. . .

. . .

. . .

3. Conclusion

Based on the above facts and law, defendant has failed to meet the extremely high standard of demonstrating that the government's conduct, as to defendant, was so excessive, flagrant, scandalous, intolerable, offensive, and so grossly shocking and so outrageous as to violate the universal sense of justice and to violate due process.

**DATED** this 23rd day of June, 2017.

Respectfully submitted,

STEVEN W. MYHRE
Acting United States Attorney

*/s/ Robert Knief*

_____
ROBERT KNIEF
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the United States Attorney's Office.  A copy of the foregoing **RESPONSE** was served upon counsel of record, via Electronic Case Filing (ECF).

**DATED** this 23rd day of June, 2017.


                      */s/ Robert Knief*
                      _____
                      ROBERT KNIEF
                      Assistant United States Attorney